UNITED STATES v. COLUMBIA GAS & ELECTRIC CORPORATION et al.

No. 1099.

District Court, D. Delaware.

Jan. 18, 1941.

See also 27 F.Supp. 116; 32 F.Supp. 474.

Thurman Arnold, Asst. Atty. Gen., Thomas J. Lynch, Sp. Asst. to Atty. Gen., and Stewart Lynch, U. S. Atty., of Wilmington, Del., for the United States.

Douglas M. Moffat (of Cravath, deGersdorff, Swaine & Wood), of New York City, and Clarence A. Southerland (of Southerland, Berl, Potter & Leahy), of

Wilmington, Del., for Columbia Gas & Electric Corporation.

William H. Button and James B. Alley, (of Auchincloss, Alley & Duncan), both of New York City, and Daniel O. Hastings, (of Hastings, Stockly & Layton), of Wilmington, Del., for Columbia Oil & Gasoline Corporation.

Robert J. Bulkley, of Cleveland, Ohio, Russell Hardy, of Washington, D. C., and Arthur G. Logan (of Logan & Duffy), of Wilmington, Del., for Missouri-Kansas Pipe Line Co.

Paul E. Krause, Corp. Counsel, and James H. Lee, Asst. Corp. Counsel, both of Detroit, Mich., for City of Detroit.

NIELDS, District Judge.

Hearing on report of special master recommending approval of a plan of divestiture filed by the defendant corporations and on separate exceptions to the report filed by the United States, by the City of Detroit, and by Missouri-Kansas Pipe Line Company (herein referred to as "Mokan"); and further, for a modification of the consent decree entered in this cause January 29, 1936.

October 30, 1935, the United States filed its amended and supplemental petition, superseding its original petition, charging Columbia Gas & Electric Corporation (herein referred to as "Columbia Gas"), Columbia Oil & Gasoline Corporation (herein referred to as "Columbia Oil"), and certain individuals with dominating and controlling the management and operation of Panhandle Eastern Pipe Line Company (herein referred. to as "Panhandle Eastern") with the purpose and effect of preventing competition, actual and potential, between Panhandle Eastern and Columbia Gas and of monopolizing and attempting to monopolize interstate trade and commerce in natural gas in certain sections of the United States, in violation of the anti-trust laws.

The several defendants filed answers to the petition specifically denying the charges therein.

Columbia Gas is a holding company owning the stock of more than fifty operating public utility subsidiaries engaged in the production, transmission. and distribution of natural gas. Their field of operations extended from Muncie, Indiana, through the States of Ohio, Kentucky, West Virginia and Pennsylvania, and to other points on the eastern seaboard. Together, they constituted the "Columbia System". Their operations were concentrated in the State of Ohio where the petition alleges they enjoyed a virtual monopoly in natural, mixed and artificial gas. In 1930 Columbia Oil was organized by Columbia Gas to hold the oil and gasoline producing properties of the Columbia System segregated from its public service properties. In 1928 Mokan was organized for the purpose of producing and distributing natural gas in the States of Kansas and Ohio and intervening states. By 1930 Mokan had acquired substantial gas producing acreage in the Panhandle district of Texas and in Kansas. In December, 1929, Mokan organized Panhandle Eastern for the purpose of building and operating a natural gas pipe line from the sources of supply in Texas and Kansas to Indianapolis, with possible extensions to points in Michigan and Ohio.

### Consent Decree.

January 29, 1936, pursuant to a stipulation entered into between the Government and the defendants, a consent decree was entered by this court in this cause. The general object of the consent decree was to prevent Columbia Gas from exercising dominion or control, direct or indirect, over the affairs of Panhandle Eastern. To this end elaborate injunctive provisions were inserted in the decree. The decree provided, among other things, that voting stock of Panhandle Eastern then held or afterwards acquired by Columbia Oil was to be placed in the custody of a trustee named in the decree, who was to vote the stock for the election of the number of directors of Panhandle Eastern which the stock was entitled to elect (six out of a total of nine), such directors to include the trustee and the remainder to be selected by him from among persons recommended by Columbia Oil "in conference and with the advice of the trustee", but excluding any past or present officer, director, agent, or employee of Columbia Gas; and the trustee was empowered "to remove and replace such directors with others of his own choosing upon his own motion, if in his judgment such action is necessary in the interest of Panhandle Eastern or for the effectuation of the purposes of this decree". The decree named Gano Dunn as such trustee.

The decree enjoined the defendants from exercising dominion or control over Panhandle Eastern or interfering with its independence of action in the sale of gas,

and from owning securities of Panhandle Eastern, subject, however, to the following: The defendants were permitted to own stock of Columbia Gas and Columbia Oil and to be directors and officers thereof; Columbia Gas was permitted to own obligations (without voting rights) of Panhandle Eastern; and Columbia Oil was permitted to own or acquire voting stock or obligations of Panhandle Eastern subject to the trusteeship created by the decree.

The decree further contained provisions applicable to financing the proposed extension of the Panhandle Eastern pipe line to the City of Detroit, Michigan.

The decree further provided for a termination, with the approval of the Court, of the trust created thereunder, when:

(1) Columbia Gas has divested itself of all·control, direct or indirect, of Panhandle Eastern by (a) No longer owning voting stock of Columbia Oil, or (b) By Columbia Oil divesting itself of ownership of all stock of Panhandle Eastern, or

(2) "Under the circumstances then existing, the continuation of said trust is no longer essential or necessary in carrying out the purposes of this decree."

In addition, the decree provided for a termination of its injunctive provisions, with the approval of the Court, when Columbia Gas no longer owned voting stock of Columbia Oil.

The consent decree was entered pursuant to a stipulation between the parties as above recited. That stipulation required performance by Columbia Gas and Columbia Oil of five or more essential requirements. It is unnecessary to discuss these requirements or to recite the steps taken under the consent decree and stipulation. The working arrangement provided by the consent decree has been carried out from the entry thereof. After the entry of the consent decree the stock of Panhandle Eastern owned by Columbia Oil was promptly lodged with Gano Dunn as trustee and has continued to be held and voted by him. The trustee has performed his duties as required by the consent decree.

. Supplemental Complaint.

January 12, 1939, the United States filed a supplemental complaint in this cause stating, among other things: "The course of events since the entry of said decree on January 29, 1936, has made it increasingly clear (1) that the only effective way to restore and maintain a position of free and independant action for Panhandle Eastern is to require Columbia Gas to divest itself of all stock of any class having existing or potential voting rights in Columbia Oil, or to require Columbia Oil to divest itself of ownership of all stock of Panhandle Eastern, as contemplated by the last paragraph of section III of said decree, and (2) that to accomplish the purpose of said decree, it is necessary to supplement said decree by a further order requiring the formulation and submission to this Court for approval of a suitable plan or plans to accomplish such divestiture."

After referring to the restrictions found in Section II and the trust established with Gano Dunn in Section III of the consent decree, the supplemental complaint concludes by asking for relief in the alternative through an order of the Court as follows:

"Directing Columbia Gas to divest itself of all control, direct or indirect, legal or practical, of Panhandle Eastern, either by disposing of all interest which it may have in any stock of any class having present or potential voting rights in Columbia Oil, or by causing Columbia Oil to divest itself of ownership of all stock of Panhandle Eastern; and, to that end:

"(a) Directing Columbia Oil to proceed straightway to formulate and submit to this Court for approval, through the trustee for sale constituted in accordance with subsection 5 of this section III, a plan for the sale or other disposition by it of all interest which it may have in any stock of Panhandle Eastern;

"(b) Directing Columbia Gas to proceed straightway to formulate and submit to this Court for approval, as an alternative to any plan submitted by Columbia Oil pursuant to paragraph (a) of this subsection 4, a plan for the sale or other disposition by it of all interest which it may have in any securities having present or potential voting rights in Columbia Oil."

Defendants Columbia Gas and Columbia Oil filed answers in opposition to the supplemental complaint.

May 15, 1939, the United States filed two motions: (1) For leave to abandon its supplemental complaint filed January 12, 1939, and (2) to vacate the consent decree entered January 29, 1936, and restore the original anti-trust action to the trial calendar upon an amended and supplemental

complaint tendered with its motions. Action on these motions was not pressed.

June 20, 1939, defendants filed the voluntary plan of divestiture which is now before the Court, looking to a modification of the consent decree. This plan is substantially the first of the alternatives sought by the Government in its supplemental complaint of January 12, 1939.

July 10, 1939, the plan of divestiture was referred to a special master to "make report to this Court of his findings of fact, conclusions of law and recommendations concerning the said motion and said proposed plan". The order of reference provided that permission be granted to Mokan, then the holder of all of the stock of Panhandle Eastern not owned by Columbia Oil, and to the City of Detroit, Michigan, and to the City of Toledo, Ohio, to appear at the hearing as amici curiae but not as intervenors. Mokan and the City of Detroit appeared, cross-examined witnesses, and filed briefs.

July 29, 1939, the special master filed his report with the recommendation: "The undersigned respectfully recommends, if your Honor should conclude that enlargement of the provisions of the plan dealing with retention of jurisdiction is unnecessary, then that your Honor approve the amended plan and upon approval of the Securities & Exchange Commission to the extent required by law and upon the taking of appropriate corporate action by the stockholders of Oil necessary under Section 6 of the Plan as amended, that the motion of Columbia Gas & Electric Corporation and Columbia Oil & Gasoline Corporation referred to in the order of reference dated July 10, 1939 be granted, that the consent decree herein dated January 29, 1936 be modified as provided in that motion and in accordance with the terms of the proposed plan."

The Court finds that the provisions of the plan respecting the retention of jurisdiction are adequate and an enlargement of those provisions is unnecessary. The plan by its terms is made subject to the approval of the Securities & Exchange Commission and to such corporate action by stockholders of Columbia Oil as may be necessary and appropriate.

### Plan of Divestiture.

Columbia Oil was organized in 1930 as a subsidiary of Columbia Gas to hold oil and gasoline properties of the Columbia System. The business of Columbia Oil and of Columbia Gas was intimately associated. This relation contributed to close operating and personal ties between the two companies.

Columbia Oil has the following securities outstanding: 400,000 shares of participating preferred stock, owned entirely by Columbia Gas, and entitled to elect a minority of directors of Columbia Oil; $21,000,000 principal amount of twenty-year debentures due in 1956, carrying 6% interest and owned entirely by Columbia Gas; 2,336,826 shares of common stock. The participating preferred stock and debentures were issued to Columbia Gas and their retention was permitted by the consent decree.

The plan provides:

(1) Columbia Gas will surrender to Columbia Oil the 400,000 shares of participating preferred stock of Columbia Oil, being all of the issue of that stock, in exchange for all oil and gasoline properties of Columbia Oil.

(2) Columbia Oil will pay $10,000,000 to Columbia Gas on its debenture indebtedness aggregating $21,000,000. The $10,000,000 is to be raised by Columbia Oil through persons having no connection with Columbia Gas.

(3) Columbia Gas will reduce from 6% to 3% the interest rate on the $11,000,000 of debentures remaining outstanding.

(4) In the event of default upon such remaining debentures, Columbia Gas will not be permitted to acquire ownership or control or be a purchaser in judgment sale of securities of Panhandle Eastern owned by Columbia Oil.

The result of these changes will be: (a) Columbia Gas will own no stock in Columbia Oil and accordingly will possess no voting rights therein; (b) Columbia Oil will hold as its only asset stock of Panhandle Eastern, and all operating relationship with Columbia Gas will terminate; (c) the indebtedness of Columbia Oil to Columbia Gas will be reduced almost one-half; (d) interest payments on the remaining indebtedness will be halved. Thus the influence of Columbia Gas over Columbia Oil will be minimized or removed.

(5) Columbia Gas will grant an option to Panhandle Eastern, for one year from the entry of a final decree approving the plan, to purchase at the actual investment of Columbia Gas therein the so-called Detroit Extension of the Panhandle Eastern

pipe line connecting its Eastern terminus with the City of Detroit if Panhandle Eastern buys a gas pipe line of Ohio Fuel Gas Company in Indiana for $355,191. This Detroit Extension is owned by Michigan Gas Transmission Corporation and Indiana Gas Distribution Corporation, wholly owned subsidiaries of Columbia Gas. If, during the year, Columbia Gas receives from sources not connected with it a satisfactory offer to purchase such properties, Panhandle Eastern will have ninety days within which to meet such terms. However, if Panhandle Eastern fails to meet such offer, Columbia Gas shall be free to accept the earlier offer. If no such sale has been made within the one-year period, a trustee shall be appointed to make sale to any purchaser not connected with Columbia Gas for a price not less than the actual investment of Columbia Gas therein, unless Columbia Gas consents to a lesser price. Thus, Columbia Gas parts with the physical link connecting Panhandle Eastern with Detroit.

(6) The following securities of Panhandle Eastern were issued to Columbia Oil pursuant to plans of reorganization and settlement with the Receivers of Mokan: 100,000 shares (the entire issue) of Class A Preferred stock (not entitled to vote for directors); 10,000 shares (the entire issue) of Class B Preferred stock (entitled to elect two directors); and 404,326 shares of common stock of a total of 808,652 shares outstanding.

Columbia Oil has a board of seven directors. The voting rights of the stock it beneficially owns in Panhandle Eastern elects six of the nine directors of Panhandle Eastern. Those directors are elected by the trustee pursuant to the terms of the consent decree. The plan provides that the trusteeship created by the consent decree with respect to voting securities of Panhandle Eastern owned by Columbia Oil shall terminate. Thereupon, all officers and directors of Columbia Oil and the six directors of Panhandle Eastern elected by the stock of Columbia Oil shall resign; and the directors of Columbia Oil shall own no stock or securities of Columbia Gas. The directors of Columbia Oil shall not include anyone who has ever been an officer, director or employee of Columbia Gas or of any of its subsidiaries. For a period of five years such directors shall not include any person "who. shall be objectionable to the Department of Justice."

Directors of Panhandle Eastern elected by Columbia Oil shall also be directors of Columbia Oil elected under the plan. Jurisdiction of this cause shall be retained by this Court "for the further purpose of requiring the resignation of any officer or director of Columbia Oil, or any successor thereto, whenever such step may be necessary to effectuate the purposes of the decree". Further, to effectuate said purposes Columbia Oil will take appropriate corporate action to "stagger" its board of directors into three classes elected for terms of one, two, and three years, respectively, with the maximum number permissible by law elected for the longest term.

The foregoing provisions of the plan will create a new slate of directors for Columbia Oil and a new slate of officers to be elected by such new directors. It will also provide a new slate of directors of Panhandle Eastern representing Columbia Oil. All directors elected by Columbia Oil, however, shall have no interest in Columbia Gas or have been an officer, director, or employee of Columbia Gas or any of its subsidiaries. Moreover, such directors must not be objectionable to the Department of Justice. The power continues to reside in this Court to require the resignation of any officer or director of Columbia Oil with the consequent disqualification to serve as a director of Panhandle Eastern representing Columbia Oil "whenever such step may be necessary to effectuate the purposes of the decree".

### Amendment of Consent Decree.

To meet the changed conditions resulting from the carrying out of the plan of divestiture, the plan provides for the amendment of the consent decree in the following particulars:

(1) To terminate the Trusteeship of Gano Dunn.

(2) To substitute the following injunctions in lieu of the injunctive provisions contained in Sections II and IV of the consent decree:

(a) Injunctions prohibiting Columbia Gas and the individual defendants from acquiring, owning or voting any securities of Panhandle Eastern, and any securities of Michigan Gas Transmission Corporation if and when Columbia Gas shall have sold its investment therein as contemplated in the plan;

494

(b) Injunctions prohibiting Columbia Gas from acquiring, owning or voting any securities of Columbia Oil, except that it may continue to own the $11,000,000 of debentures of Columbia Oil and may acquire up to $2,000,000 of additional debentures under existing commitments; also from controlling Columbia Oil or Panhandle Eastern, or Michigan Gas Transmission Corporation if and when its investment therein is disposed of; and

(c) Injunctions prohibiting the individual defendants from acquiring, owning or voting securities of Columbia Oil in addition to those now owned by them, participating in the management of Columbia Oil or of Panhandle Eastern, or participating in the management of Michigan Gas Transmission Corporation if and when the investment of Columbia Gas therein is disposed of as contemplated by the plan.

The plan further provides that the consent decree shall be amended to provide for the sale within five years by Philip G. Gossler of all stock owned by him in Columbia Oil and an injunction against his voting such stock in the interval until it is disposed of.

The Government objects to approval of the plan unless certain blocks of common stock of Columbia Oil "be disposed of by the present holders thereof to other persons having no direct or indirect interest in or connection with Columbia Gas & Electric Corporation on or before the entry of any final order approving the amended plan". These blocks of common stock are:

| Holders | Shares |
|---|---|
| The United Corporation and its subsidiary, New York United Corporation | 84,769 |
| Philip G. Gossler | 65,872 |
| Mrs. Katherine Clay | 30,358 |
| E. W. Edwards | 25,009 |
| Present officers and directors of Columbia Gas | 8,697 |

Since the Master's report arrangements satisfactory to the Government have been made which eliminate the necessity for any provision relating to United's stock. The United Corporation has agreed to be made a party to this proceeding and that the decree herein prohibit it from voting the stock of Columbia Oil which it owns without the prior approval of this Court except that it may vote such stock for the purpose of a quorum and for the proposed plan.

Gossler was president of Columbia Gas from 1926 until the filing of the Government's petition in October, 1935. He was the chief executive officer of Columbia Gas during the entire period complained of in the petition. He remained president of that company until he assumed his present office of chairman of the board. He was one of the three voting trustees of common stock of Panhandle Eastern from the time of the creation of such voting trust until September 19, 1935. In 1930 and 1931, when the conspiracy of which the Government complains in its petition had its origin, he was also a director of Panhandle Eastern and a director and president of Columbia Oil. The petition alleges that he was "a central figure, if not the prime mover, in the creation and execution of the conspiracy complained of." He is the largest individual holder of common stock of Columbia Oil, excluding the United Corporation. He is also a substantial holder of common stock of Columbia Gas.

The plan provides that Gossler shall "within five years after the entry of the order approving the plan, sell all stock now owned by him in Columbia Oil, or any successor thereto, and, in the intervening period so long as he shall own any stock in Columbia Oil, or any successor thereto, shall be enjoined from voting any shares of such stock or suggesting how any shares of such stock owned by any of his relatives should be voted."

It is true that this proposal will neutralize the voting power of Gossler's stock. It does not, however, remove the substantial financial interest he may continue to have for at least five years from the entry of a final decree in Columbia Oil while at the same time remaining chairman of the board and a substantial stockholder of Columbia Gas. The record does not justify a finding that undue hardship would be suffered by Gossler in requiring him to dispose of his stock on or before the entry of a final decree approving the plan. If hardship were entailed, such result must be held an incident of this litigation and a contribution by one of the principal defendants to the accomplishment of the object sought in this proceeding. Final approval of the plan and amendment of the consent decree will be conditioned upon the prior disposal by Gossler to another person or persons having no direct or indirect interest in or connection with Columbia Gas of

any and all common stock of Columbia Oil which he may own.

Similar considerations apply to the stock held by officers and directors of Columbia Gas. They should not be interested in voting securities of Columbia Oil.

■ A different situation, however, exists with respect to the stock of Edwards and of Mrs. Clay, daughter of Gossler. Neither of those persons is a defendant in this cause. The court has no jurisdiction or control over them. Edwards has not been a director of Columbia Gas since 1938. Possibly some agreement may be reached by the parties with respect to the treatment of these two blocks of stock before the time arrives for the entry of a final decree.

■ Mokan raises the same objections urged by the Government with respect to the stock of the individual stockholders above mentioned. It adds to that list Charles A. Munroe and William P. Philips, voting trustees of the dissolved voting trust of Columbia Oil, and four brokerage firms. Since the dissolution of the voting trust, the voting trustees have not voted stock held by them and have advised the court they will not vote such stock. There is no evidence of any connection between Columbia Gas and any of the four brokerage firms except that a member of one firm is a director of Columbia Gas and another member (now deceased) was formerly a director of Columbia Gas. The owners thereof have the right to direct how their shares shall be voted. The Court has no jurisdiction over them. No order will be made respecting this stock.

■ The plan of divestiture provides that for a period of five years from the date of the entry of an order approving the plan, the directors of Columbia Oil shall be persons "not objectionable to the Department of Justice". Mokan asserts that such an amendment is illegal under the laws of Delaware because stockholders of a Delaware corporation may choose as their directors whomsoever they please. Mokan further asserts that the adoption of such an amendment would not bind the dissenting minority.

■ The charter of Columbia Oil may be amended by its stockholders to provide the qualifications of a candidate for director. Under Delaware law it would be possible by charter amendment to impose as a qualification of eligibility for a period of five years the requirement that a candidate be not objectionable to the Department of Justice. An amendment to that effect would bind both the majority voting for it and any dissenting minority. Triplex Shoe Co. v. Rice & Hutchins, 17 Del.Ch. 356, 152 A. 342, 72 A.L.R. 932; Maddock v. Vorclone Corp., 17 Del.Ch. 39, 147 A. 255; Morris v. American Pub. Utilities Co., 14 Del.Ch. 136, 122 A. 696.

■ Irrespective of Delaware law, this court in a Federal anti-trust case has the right to impose such a requirement as to the qualification of directors. Columbia Oil is before the Court as a party. For the purpose of enforcing the anti-trust laws an injunction binding Columbia Oil can also bind its stockholders.

The other objections raised by Mokan to the plan of divestiture have been fully considered by the Court and have been found untenable.

■ In addition, the City of Detroit objects to the approval of the plan and urges that the plan of divestiture should follow substantially the second of the alternatives sought by the Government in its supplemental pleading, i. e., by causing Columbia Oil to divest itself of ownership of all stock of Panhandle Eastern. The question before the Court, however, is not the relative merits of two plans of divestiture. The question is simply whether the plan before the Court is adequate to meet the requirements for relief under the anti-trust laws. The Government has taken the position that the plan submitted, with certain modifications which this Court has approved, will be effectual to accomplish the relief sought. The City of Detroit has harkened back to a plan of divestiture not developed at the hearings or considered by the special master and not before the Court.

An order in accordance with this opinion may be submitted.