## YOUNG v. COLUMBIA GAS & ELECTRIC CORPORATION et al.

### Civ. A. No. 52.

District Court, D. Delaware.

Feb. 20, 1941.

Harry F. Payer and Eugene Bleiweiss (of Payer, Corrigan, Bleiweiss & Cook), both of Cleveland, Ohio, and Howard Duane, of Wilmington, Del., for plaintiff.

Frederick H. Wood and Douglas M. Moffat (of Cravath, de Gersdorff, Swaine & Wood), both of New York City, and Clarence A. Southerland (of Southerland, Berl, Potter & Leahy), of Wilmington, Del., for Columbia Gas & Electric Corporation.

William H. Button and James B. Alley (of Auchincloss, Alley & Duncan), both of New York City, and Daniel O. Hastings (of Hastings, Stockly, & Layton), of Wilmington, Del., for Columbia Oil & Gasoline Corporation.

NIELDS, District Judge.

This is a suit by the holder of 100 shares of the common stock of Columbia Gas & Electric Corporation to enjoin the carrying out of a plan submitted to this court as a settlement of United States v. Columbia Gas & Electric Corporation and others, a pending anti-trust suit.

The complaint charges such inadequacy of consideration as to amount to "reckless and illegal distribution and waste of the assets of Columbia Gas" and that the plan is unfair and disadvantageous to Columbia Gas and was adopted for the purpose of enriching certain directors who were stockholders of Columbia Oil at the expense of Columbia Gas.

Plaintiff is David Young, III. He is a lawyer and has owned 100 shares of common stock of Columbia Gas since September 22, 1936, out of a total issue of 12,304,282 shares. His stock was worth in the neighborhood of $600. If all the claims made in the complaint are established, he would stand to make about $100. He testified that he is paying the expenses of the case.

The principal question for determination is a complicated issue respecting the fair

and reasonable value of certain properties of the defendant involving the presentation and consideration of detailed evidence. Accordingly the case was referred to a special master to hear the parties, to take evidence upon the issues raised by the pleadings and to report to this court his findings of fact, conclusions of law and recommendation. The master held protracted hearings. He took 3,694 pages of testimony and admitted voluminous exhibits. After considering extended briefs and hearing oral argument on behalf of the parties the master filed his report and opinion covering 153 pages, with 142 separate findings of fact and conclusions of law covering 83 pages. The master recommended that the complaint be dismissed. The matter is now before the court on defendants' motion to confirm the report.

Since the filing of the master's report this court has found that the plan of divestiture submitted in the anti-trust case should, with slight modifications, be approved and the consent decree entered in that case amended. United States v. Columbia Gas & Electric Corp., 36 F.Supp. 488. Accordingly it becomes unnecessary to rehearse the provisions of the plan contained in the reported opinion of the court.

The important feature of the proposed plan of divestiture and the one most severely attacked in this suit is the provision relating to the exchange of properties. The plan provides that Columbia Oil will promptly transfer to Columbia Gas all of its properties other than its interest in Panhandle Eastern, these properties constituting all of the authorized and outstanding shares, and obligations if any, of the following subsidiary companies: The Preston Oil Company; the Viking Distributing Company; the Virginia Gasoline & Oil Company; the Union Oil & Gasoline Company, and the Ohio Fuel Supply Company. In consideration therefor, Columbia Gas will surrender to Columbia Oil 400,000 shares of the participating preferred stock of Columbia Oil, being all of the authorized and outstanding shares of that class of stock.

The master decided that this exchange is fair to Columbia Gas. He placed a value on the oil and gasoline subsidiaries of $14,000,000. He placed a value on the preferred stock of Columbia Oil of $9,482,-000. Without regard to the collateral advantages which the plan provides for Columbia Gas, this exchange would be in favor of Columbia Gas. However, the court is not limited to considering comparative property valuations. The plan was conceived for the purpose of settling once and for all the Government anti-trust suit. It was finally adopted after a period of almost six months of intensive negotiation with Columbia Oil and with the Department of Justice. The directors of Columbia Gas declared that the plan in their best judgment was fair to Columbia Gas not only from the point of view of the value of the properties exchanged but from the point of view of the intangible advantages to be derived from the plan. These intangible advantages are:

(1) The plan would effect an immediate and final settlement of the long-standing dispute with the Government without loss, as contrasted with the uncertainties of litigation and of the circumstances which might exist at its termination.

(2) The plan would free the executives of the Columbia Gas system from the annoyance and consumption of time in litigation and would avoid the expenses incident thereto; the elimination of this troublesome litigation would also improve public relations throughout the Columbia Gas system, highly important to a public utility.

(3) It would accelerate the integration proceedings, whose determination is essential to the efficient and orderly administration of the system.

(4) It would meet the criticism expressed by the SEC representatives at the integration hearing of the existing operating relationships between the Columbia Gas subsidiaries and the oil and gasoline subsidiaries, which in themselves constitute an obstacle to favorable action on the integration plan.

(5) It would save $1,000,000 to $1,500,000 per year in interest charges through the refunding of the Columbia Gas debentures, the refunding operation being contingent upon the receipt of an integration order.

(6) It would save another $1,000,000 to $1,500,000 through the refunding of the Columbia Gas preferred stock contingent upon refunding the debentures.

(7) Under the plan Columbia Gas would receive in the near future approximately $20,000,000 and eventually nearly $30,000,-000, which will be cash available either for expansion (such as a new pipe line to secure a future auxiliary supply of gas) or reduction of debt.

Plaintiff's objections to the plan of divestiture are: (1) The Columbia Gas directors must have been influenced consciously or un-

consciously in voting for the plan by their large holdings in Columbia Oil. (2) The exchange is unfair to Columbia Gas. (3) An additional $330,000 per year is sacrificed by Columbia Gas through its agreement to reduce the interest on $11,000,000 of debentures to 3%. (4) The master's method of analysis is subject to criticism. (5) The master's deduction of $800,000 from the value of the 400,000 shares of preferred stock for theoretical cost of distribution of said shares was erroneous. (6) The master placed too low a value upon the Panhandle Eastern common stock. (7) The master's valuation of the Panhandle Eastern A preferred stock is subject to criticism. (8) The 400,000 shares of Columbia Oil preferred stock should not be grossly depreciated because they are non-cumulative. (9) The plan completely ignores the serious liabilities and causes of action arising out of and connected with the smoke gas suit. (10) The intangible advantages are subject to criticism.

■ After full consideration of each and all of plaintiff's objections the court agrees with the master's findings and conclusion that the exchange is fair.

■ The law applicable to the facts of this case is well settled. A transaction will stand where it is reasonably within the judgment of the directors of the respective corporations and is not so unfair as to amount to constructive fraud.

"A presumption exists that corporate action whether by stockholders or directors in the sale of assets is in the best interests of the corporation. Robinson v. Pittsburgh Oil Refining Corp., 14 Del.Ch. 193, 126 A. 46; Finch v. Warrior Cement Corp. [16 Del.Ch. 44], 141 A. 54; and in Davis v. Louisville Gas & Electric Co. [16 Del.Ch. 157], 142 A. 654, it was said generally that courts will not upset the decisions of either directors or stockholders as to questions of policy and business management. An abundance of authority in other jurisdictions might be cited to the same effect. Fraud, actual or presumed, or illegal or ultra vires misconduct must be shown to justify an interference by the courts with such decisions." Mercantile Trading Co. v. Rosenbaum Grain Corp., 17 Del.Ch. 325, 154 A. 457, 461.

■ The suggestion that the decision of this court be deferred until there can be a hearing before the Securities & Exchange Commission does not weigh with the court. The questions here and the questions before the SEC are different. Notwithstanding the very important field of work committed to the SEC there is no occasion to postpone the decision of this case. To adopt the suggestion would lead to confusion and delay.

The court will confirm the report of the special master and dismiss the complaint.

An order may be submitted.