### YOUNG v. COLUMBIA GAS & ELECTRIC CORPORATION et al.

### No. 7760.

Circuit Court of Appeals, Third Circuit.

Argued May 7, 1942.

Decided June 30, 1942.

Eugene Bleiweiss and Harry F. Payer, both of Cleveland, Ohio (Payer, Corrigan, Bleiweiss & Cook, of Cleveland, Ohio, and Howard Duane, of Wilmington, Del., on the brief), for plaintiff-appellant.

Frederick H. Wood, of New York City (Cravath, de Gersdorff, Swaine & Wood, of New York City, Southerland, Berl & Potter, of Wilmington, Del., Clarence A. Southerland, of Wilmington, Del., and

Douglas M. Moffat and William Wemple, both of New York City, on the brief), for Columbia Gas & Electric Corporation, appellee.

Wm. H. Button, of New York City (Daniel O. Hastings, of Wilmington, Del., and Auchincloss, Alley & Duncan, and James B. Alley, all of New York City, on the brief), for defendant-appellee Columbia Oil & Gasoline Corporation.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Columbia Gas & Electric Corporation is a registered public utility holding company. It owns many subsidiaries which sell natural gas and electric energy. Columbia Oil & Gasoline Corporation, another of its subsidiaries, is engaged in gasoline extraction and oil production. It in turn owns all the capital stock of five oil and gasoline subsidiaries.[1] In 1930 Columbia Oil purchased one-half of the outstanding capital stock and the entire issue of the first mortgage bonds of Panhandle Eastern Pipe Line Company and paid for the securities with money borrowed for the purpose from Columbia Gas. Columbia Gas now holds $21,000,000 of Columbia Oil debentures which it received for this and other advances. Panhandle owns and operates a pipe line for the transportation of natural gas.

In 1935 the United States instituted a suit in equity in the District Court for the District of Delaware, charging Columbia Oil and Columbia Gas with violation of the anti-trust laws in connection with the purchase of the interest in Panhandle. In 1936 a consent decree was entered providing that the Panhandle voting stock held by Columbia Oil should be placed in the name of a trustee, that Columbia Gas be enjoined from exercising any control over Panhandle, that a then existing voting trust for Columbia Oil common stock be terminated and the stock distributed to certificate holders and that the preferred stock of Columbia Oil held by Columbia Gas be replaced by a new issue which, so long as it was owned by Columbia Gas should be entitled to elect not more than a minority of the Board of Directors of Columbia Oil. In compliance with the consent decree Columbia Gas received 400,-000 non-cumulative participating preferred shares of Columbia Oil which were restricted in their voting rights to the election of not more than a minority of directors. In December, 1938, the United States filed a supplementary complaint and sought to reopen the consent decree in the anti-trust suit, and to obtain a decree that Columbia Gas divest itself of its preferred stock interest in Columbia Oil or that Columbia Oil divest itself of its stock interest in Panhandle. The corporations decided not to litigate but to settle the matter by agreement. Negotiations ensued between Columbia Gas, Columbia Oil and the Department of Justice, resulting in a plan adopted and filed in the district court jointly by Columbia Gas and Columbia Oil on June 20, 1939.

Columbia Oil has outstanding $21,000,000 of debentures all held by Columbia Gas, carrying 5% interest until February, 1940 when the interest increased to 6%. Its capital stock consists of 400,000 shares of non-cumulative participating preferred stock, all held by Columbia Gas, and 2,336,-826 shares of common stock of $1 par value, held by the public. Columbia Oil assets consist of all the stock and indebtedness of the five oil and gasoline subsidiaries and its stock holdings in Panhandle.

The plan provides in substance that:

(a) Columbia Oil transfer to Columbia Gas the stock and obligations of the five subsidiaries of Columbia Oil in exchange for 400,000 shares of preferred stock of Columbia Oil held by Columbia Gas;

(b) Columbia Oil sell for not less than $10,000,000 its Panhandle Class A preferred stock, using the proceeds to reduce the $21,000,000 of Columbia Oil debentures held by Columbia Gas;

(c) Columbia Gas reduce the interest on the balance of the Columbia Oil debentures held by it to 3% a year.

(d) Columbia Gas give Panhandle an option to buy the stock and debt of certain properties connected with the Panhandle Pipe line at cost;

(e) Philip G. Gossler, chairman of the Board of Columbia Gas, sell his Columbia Oil common within five years and in the meantime be enjoined from voting it;

(f) All officers and directors of Columbia Oil resign and be replaced by persons

---

[1] Preston Oil Company, Virginian Gasoline & Oil Company, Union Oil & Gasoline Company, Ohio Fuel Company and Viking Distributing Company.

not objectionable to the Department of Justice; and

(g) Columbia Gas save Columbia Oil harmless from any liability in an action pending in the Court of Common Pleas at Columbus, Ohio, entitled John Davies v. Columbia Gas & Electric Corporation et al.

On July 18, 1939 the plaintiff, who is the owner of 100 out of a total of 12,304,282 outstanding shares of common stock of Columbia Gas, filed a bill in equity in the District Court for the District of Delaware, seeking to enjoin the carrying out of the plan. The cause was referred to a special master who found the plan was fair and equitable and recommended that the bill be dismissed. The district court confirmed the master's report and dismissed the bill. 37 F.Supp. 22. The plaintiff has taken this appeal.

Our duty upon this appeal is to determine whether there is sufficient evidence to sustain the special master's findings of fact and whether those fact findings justify his conclusions that the plan was adopted by an adequate number of financially disinterested directors and that the plan was fair. It is not within our province to determine whether the plan provides the maximum return to Columbia Gas which shrewd and aggressive bargaining might have achieved for it. Nor are we presently concerned with the effect of the plan upon the public interest.[2]

■ The plaintiff attacks the plan as unfair to Columbia Gas upon several grounds. He first asserts that the five subsidiaries are worth less than the Columbia Oil preferred stock. The special master did not find this to be the fact, however. As a result of his study of the Wylie and Biddison appraisals, made prior to the divestiture plan now before us and for a purpose unrelated thereto, and of the testimony of expert witnesses for the defendant the special master concluded that the market value of the subsidiaries was $10,000,000, their value to Columbia Gas as part of its system was $14,000,000 and the market value of the Columbia Oil preferred stock on June 2, 1939 was $9,482,000. He chose to accept the testimony of the defendant's experts because in his opinion their ability, methods of valuation and study of the problems were superior to those of the witnesses called by the plaintiff.[3] The plaintiff says that the special master overestimated the projected earnings of the five subsidiaries and improperly assigned value to certain drilling contracts with Columbia Gas and that consequently he placed too high a valuation upon the five subsidiaries. He points to the actual earnings of the subsidiaries in 1938 and 1939 and to the downward trend of those earnings. Neither the directors nor the special master could have had notice of the 1939 earnings at the time they passed upon the plan. Nor is there any reason why the method of valuation advocated by the plaintiff, which was based solely on the capitalization of actual earnings of the subsidiaries, is a more accurate measure of value than that adopted by the special master which was based upon studies and appraisals made by engineers, geologists and investment experts.

■ The plaintiff next argues that the special master's valuation of the Columbia

[2] The divestiture plan has been approved by the district court in the anti-trust suit. United States v. Columbia Gas & Electric Corporation, D.C.1941, 36 F.Supp. 488.

Columbia Gas sought to obtain an order from the Securities and Exchange Commission that it is a single integrated public utility system within the meaning of the Public Utility Holding Company Act, 15 U.S.C.A. § 79 et seq. The directors of Columbia Gas desired to refinance its outstanding debentures and preferred stock in order to effectuate a saving in interest charges and were advised that such an integration order was necessary. Because of the anti-trust suit then pending they omitted from the integration plan the interests in Columbia Oil and Panhandle. On January 10, 1941 the Securities and Exchange Commission rejected the integration plan. On January 27, 1942 it expressed grave doubts as to the divestiture plan. The proceedings before the Securities and Exchange Commission are not part of the record nor have we taken judicial notice of them. References to the integration proceedings are, however, found throughout the plaintiff's briefs.

[3] Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides, inter alia, that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

Oil preferred stock is too low and attributes this in part to the fact that he assigned 20% of the equity in Columbia Oil to the common stock. The plaintiff asserts that except for the plan the preferred stock is entitled to all the earnings of Columbia Oil and to all its assets upon liquidation and that the common stock therefore has but a nuisance value. He asks us to conclude that the plan is "shockingly unjust" to Columbia Gas, the owner of the preferred stock, because the common stock as a result of the plan will acquire an interest in assets of Columbia Oil and Columbia Gas will be deprived of at least 20% and possibly as much as 50% of Columbia Oil's present assets.

■■■ In considering this point the special master rightly held that the fact that the assets of Columbia Oil upon liquidation would probably be consumed in meeting the prior claims of the preferred stock and thus leave nothing for the common has no significance because at the time the plan was agreed upon liquidation of Columbia Oil, voluntary or involuntary, was not imminent nor was the distribution of Columbia Oil assets upon liquidation within the contemplation of the parties. Nor did the special master accept the plaintiff's premise that the preferred stock was entitled to and would receive all the earnings of Columbia Oil to the exclusion of the common stock. He evaluated the preferred stock of Columbia Oil from the standpoint of a prospective buyer of that stock at the time of the plan. He determined that such a buyer, considering the charter provision as to the rights of the preferred stock in the distribution of dividends,[4] might have serious doubts whether the preferred stock was entitled to earned surplus when once the year in which it was earned had passed without a dividend being declared, and might be impressed with the possibility that Columbia Oil income was subject to fluctuation and that directors, a majority of whom owed their election to the common stock, might withhold dividends upon the preferred stock. Out of an accumulated surplus dividends could be declared upon common as well as preferred stock. Since the task of the special master was to evaluate the preferred stock rather than to determine whether as a matter of law the directors who passed dividends would be guilty of an abuse of the discretion vested in them by the charter or of a breach of trust,[5] it was quite proper for him to take into consideration that a prospective buyer might as a practical matter conclude that the common stock had a real rather than a mere nuisance value and that the preferred stock was proportionately decreased in value. The plaintiff also argues that the valuation placed upon the Panhandle stock, which was one of the Columbia Oil assets giving value to its preferred stock, should have been $50 per share rather than $35. There was, however, a conflict in the testimony of the expert witnesses as to this

---

[4] "The holders of the Preferred Stock shall be entitled in the calendar years hereinafter set forth to receive out of the net profits or net assets of the Corporation applicable to dividends, but only if and when declared by the Board of Directors, dividends (hereinafter referred to as preferential dividends) at the following respective rates:

| Calendar Year | Preferential Dividend Rate |
| --- | --- |
| 1938 | $1.00 per share |
| 1939 | $1.50 per share |
| 1940 | $2.00 per share |
| 1941 | $2.50 per share |
| 1942 | $3.00 per share |
| 1943 | $3.50 per share |
| 1944 | $4.00 per share |
| 1945 | $4.50 per share |
| 1946 and thereafter | $5.00 per share |

before any dividends shall be paid in, or declared and set apart for payment in, such calendar year upon the Common Stock and before any sum shall be set aside for or applied to the purchase or redemption of stock of the Corporation of any class; but no part of such preferential dividends shall be cumulative whether or not in any calendar year there shall be net profits or net assets available for the payment of such preferential dividends. All dividends (whether payable in cash or otherwise) in addition to the preferential dividends above set forth which may be paid or declared or set apart for payment in any calendar year (such additional dividends being hereinafter referred to as participating dividends) shall be paid, or declared and set apart for payment, one-half to the holders of the Preferred Stock as a class and one-half to the holders of the Common Stock as a class."

[5] Berle, Non-Cumulative Preferred Stock, 23 Columbia Law Review, 358 (1923); Rights of Non-Cumulative Preferred Stockholders, 34 Columbia Law Review, 1439 (1934).

value. The special master's finding was clearly supported by competent evidence.

■ The plaintiff attacks that provision of the plan whereby Columbia Gas agrees to reduce its interest charges upon $11,-000,000 of Columbia Oil debentures which will remain outstanding in the hands of Columbia Gas. Columbia Gas will lose $3,000,000 in interest collections as a result. However, as part of the bargain Columbia Oil has agreed to sell so much of its Panhandle stock holdings as will net $10,000,-000, and to apply the proceeds to the payment of Columbia Oil debentures held by Columbia Gas. The immediate use of that capital may well be of such great value to Columbia Gas as to offset the annual loss of interest over a period of years while the loss by Columbia Oil of its 6% return upon the Panhandle stock which it agrees to sell is an important offsetting factor. The plaintiff takes exception to the undertaking by Columbia Gas to indemnify Columbia Oil against liability in the so-called Davies suit. Although the action is for $14,000,000 the directors and officers of Columbia Gas considered the possibility of an adverse decision remote. They were so advised by counsel. It is clear that the matter was one for their judgment.

■ The plaintiff attacks the plan on the ground that certain directors and officers of Columbia Gas profit by the plan as a result of their holdings in Columbia Oil common stock. The plan may of course be fair even though participants profit personally as a result. This factor becomes important only if the number of financially interested directors was such as to nullify the action of the board of directors. The special master found that the plan was unanimously approved at a meeting on June 2, 1939 at which thirteen of the fifteen directors of Columbia Gas were present and that this action was ratified on July 12, 1939 at a meeting attended by fourteen of the directors. Seven had no interest in Columbia Oil shares, either directly or through members of their family. One owned proportionately more Columbia Gas than Columbia Oil stock. Two had no holdings of Columbia Oil stock and their family holdings were too insignificant to influence their judgment. The plan was, therefore, approved by at lease eight financially disinterested directors and probably

by ten. There is no allegation that the four directors who were financially interested in Columbia Oil common stock attempted unduly to influence their fellow directors to vote for the plan. We think the special master was justified by the evidence in finding that the plan was approved by an adequate number of financially disinterested directors.

■ The plaintiff's argument that the directors voted upon the plan without the benefit of reports, appraisals or expert testimony concerning the respective values of the subsidiaries and the preferred stock has no bearing upon the question before us, the fairness of the plan. This is not an action against the directors for malfeasance or nonfeasance in office. If the facts found by the special master sustain his conclusion that the exchange of the Columbia Oil preferred stock for the subsidiaries was fair it is immaterial for our purposes that those facts were not before the directors and not considered by them at the time they voted their approval of the plan. They may well have considered the plan beneficial to Columbia Gas even though a balance sheet might have disclosed that Columbia Gas sustained a financial loss.

■ Even if we assume that the preferred stock was worth more than the subsidiaries, that the plan resulted in a windfall to Columbia Oil common stock at the expense of Columiba Gas, that the loss of $3,000,000 in interest on the debentures exceeded the benefit accruing to Columbia Gas from the immediate acquisition of $10,000,000 in cash, and that the Davies suit presented a continuing possibility of liability, the plan may nevertheless be fair. For Columbia Gas was confronted with the necessity of solving a dual problem—that of avoiding litigation in an anti-trust suit and of procuring an integration order. Viewed as a whole and not piecemeal the financial loss, if any, to Columbia Gas as a result of the plan may be more than compensated by the right which it will acquire to conduct its business as a public utility holding company within the law unhampered by government prosecution. The special master so found and the corporate history of Columbia Gas justifies this finding. We conclude that the district court did not err in dismissing the bill.

The decree of the district court is affirmed.